The opinion of the Court was delivered by
Wabdlaw, J.
Independent of the efficacy of any town ordinance, the action cannot rest upon the ground that defendant’s promise to refund money, which the plaintiffs have expended for his benefit, may be implied from his silence whilst he saw the work go forward, knowing that he wps expected to pay for it.— The Council had full right to do the work, without consulting the defendant: he could not lawfully have hindered it; and he declined to give even that testimony of his assent, which the expression of a preference for one material rather than another might have been supposed to include.
It is true, that when a corporation has no other means of compelling its members to pay the sums which have been required from them according to its by-laws, it may have the aid of this Court, and in an action here, a promise by a member to render his dues will be implied. (Corporation of Columbia vs. Harrison, 2 Mill, 213).- This implied promise, however, presupposes and grows out of an obligation enacted by a valid by-law.
The sum here demanded from the defendant is neither a fine nor a tax. It is not a fine, because that is. a mulct laid by some competent tribunal for punishment of an offence, implying trial and judgment: whereas the proceeding against the defendant *554 has been only the demand from him by a marshal of a sum ascertained by calculation under a general order which embraced all persons who were in arrear for the curbing. It is not a tax, because there was no. ordinance imposing such a tax: — it was not laid upon any property nor apportioned to the quantity or value of any thing besides the work done: — and the order under which it was demanded, was not general, so as to operate upon all the corporators who owned the property made by it liable to taxation, but was confined to a special class; in all which particulars, the Acts hereafter cited will show that it is distinguished from any tax which the intendant and wardens may lay, under the special grants that have been made to them of power to lay taxes upon certain enumerated subjects.
The sum demanded is then nothing but the share which has been charged upon the defendant as a lot-owner, according to an assessment made upon the lot-owners of a certain street, under an order which was intended to make them exclusively liable for the expenses of a useful work in that street, and considered to be more beneficial to them than to other corpo-rators.
If there had been a by-law ordaining that such work should be done and such assessment made, and providing a mode of proceeding, there is no room to doubt that the law might, according to the mode provided, have been executed by the Council itself, its committee, officers or servants, under general or particular directions given by the Council or by any body authorized by the by-law. The by-law or ordinance, containing the rule, must have been under the common seal of the corporation; but the executive acts need not have been. A great difficulty in this case is, however, that there was no ordinance which authorized an assessment. The 10th section of the Ordinances of April, 1851, (ordinance of Columbia, page 88,) provides that each lot-owner on Richardson street shall do certain work: and that if he should neglect to do it after ten days notice, he shall be fined, and the marshal, after the expiration of the notice, shall cause the work to be done at his *555 expense. The proceeding thus ordained is very different from that which was taken in the case before us. If we admit that the curbing is within the work contemplated by this section, we yet see that the Council, for the purpose of securing uniform width and proper height in the pavement, or for some other reason, determined to do the work of curbing itself— made no requisition for the lot-owners to do it, but after it was done ordered them to pay. The objection is not, that the defendant had not notice of the payment required from him, but that he had not the opportunity by doing the work himself, after notice that he was required to do it, to avoid fine or expense as the section contemplates. I speak the opinion of three members of the Court, when I say that the proceeding against the defendant is considered to be unauthorized by any ordinance of the town.
There are two other members of the Court who do not clearly see the defect in the ordinances and proceedings of the Council : but they and one of the three before mentioned, are of opinion chat an assessment upon lot-owners in a particular street for improvements made in that street, is not authorized by the charter of the Town of Columbia, and that a by-law of the corporation ordaining such an assessment is consequently void. This point, as indeed the one concerning the conformity of the proceeding against the defendant to any existing ordinance, cannot be now authoritatively adjudged: and I will only indicate, some of the views which prevail.
In the City of Charleston, by an Act of 1764, (a) the commissioners of streets were authorized to level and pave footways, sink drains, &c. and to assess the expense thereof upon the owners of land benefitted thereby, in proportion to the value of the property benefitted ; and by the charter the Council is vested *556 with all the powers and authorities, which by law had been conferred upon the commissioners of streets.
In the Town of Columbia, commissioners of the streets and markets were, in 1797, (9 Stat. 380, sec. 8,) “ vested with all the powers and authorities within the limits of the said town, which the commissioners of the town of Georgetown are vested with, within the limits of Georgetown, by an Act “passed 1791. The Act of 1791, (5 Stat. 186,) had given to the commissioners of the town of Georgetown” power to assess, according to the valuation of the general tax, all the lots and buildings of the said town, in such a sum as they shall deem sufficient for keeping the streets and causeways of the said town in repair.”
In 1798, (5 Stat. 333,) provision was made for more formal appointment of the commissioners of thé streets and markets of Columbia, and their powers were enlarged. They were within the town vested with the powers of Commissioners of Roads— and were authorized “ to make, establish, and pass all such rules and regulations within the said town, as they may deem proper and requisite, for the promotion of the quiet and safety of the inhabitants of the said town, and for the regulation of the streets and markets” — and to impose and collect in a summary way fines on persons who might infringe “ their by-laws, rules and regulations.”
By an Act of 1805, (8 Stat. 235,) the town of Columbia was incorporated, the commissioners of streets and markets were superseded, and the intendant and wardens (in words not materially different from those before employed as to the commissioners) “ were vested with full and ample power, from time to time, under their common seal, to make all such ordinances, rules and regulations, relative to the streets and markets of the said town, as they may think proper and necessary, and establish such by-laws as may tend to preserve the quiet, peace, safety and good order of the inhabitants thereof” — and to impose and collect in a summary way, fines and penalties “ for the violation thereof:” — and further, “in addition to all such fines and penalties as may be incurred and recovered, and the tax on *557 all licenses” granted by them, it was made their duty to lay on all the real taxable property within the said town, according to the valuation thereof made in the mode provided, a tax “ sufficient to discharge and defray all the expenses of carrying into effect the rules, regulations, and by-laws made and established as above mentioned” — which tax should not exceed a certain limit, and might be collected as they should direct.
An Act of 1811, (5 Stat. 642,) declared that the inhabitants of said town are “ liable to work upon and keep the streets of said town in good and sufficient repair, under the control and direction of the intendant and wardens thereof, under the same regulations and restrictions as the citizens of this State are liable to work upon the public roads of this State.”
An Act of 1819, (6 Stat. 118,) enlarged the limit of the tax which might be imposed on all the real property of the said town, “ sufficient to discharge and defray all the expenses of carrying into effect the rules, regulations and by-laws of the said town.”
An Act of 1824, (6 Stat. 240, 254,) gave power to lay a tax on all the personal taxable property within the said town, construed by another Act of the same session, to mean a tax of small amount on each slave within said town.
An Act of 1825, (6 Stat. 261,) authorized a tax to be laid on all pleasure carriages and other vehicles belonging to the inhabitants of said town, for the use of the corporation.
An Act of 1828, (8 Stat. 365,) empowered the intendant and wardens to regulate sales at auction within the town, to grant licenses to auctioneers, and to lay such taxes on sales at auction as they may deem expedient: and to impose a tax on vehicles used in the town and owned by persons residing out of it, not exceeding the tax imposed on similar vehicles belonging to residents within the town.
By an Act of 1839, (11 Stat. 68,) power was given to impose a limited tax upon all merchandize exposed for sale, or the proceeds of all merchandize sold within the corporate limits, — upon *558 all dogs owned within the limits, and upon all slaves living within the town and owned by persons residing therein.
An Act of 1818, (6 Stat. 103,) and one of 1848, (11 Stat. 543,) each authorized an imposition upon the taxable property within the town, of a tax to meet the payments of money which the intendant and wardens were authorized to borrow. The latter Act gives the power to lay a limited tax on all incomes derived from factorage, employments and professions, and makes special provision for the collection of taxes imposed under it, but still requires the tax on real properly to be in ratio to the valuation, not exceeding seventy-five cents for every hundred dollars.
It will be seen how special have been the grants of the money power) how carefully a partial tax seems to have been guarded against, and how regulations leading to expenditure are restrained by the necessity of defraying all the expenses of carrying every regulation into effect out oí resources so cautiously limited.
The requisition upon lot-owners in Richardson street, which we are now considering, falls not within the provisions for street or road duty, but is additional to that, for it is made upon all of these lot-owners, whether they have purchased exemption from the ordinary duty or not. Not being an ordinary tax, nor, as an assessment upon particular persons, being expressly authorized, if it can be defended at all, it must be defended upon the ground that it is a regulation concerning streets, which comes under the large discretionary powers given upon that subject. In that view the objections to it, are, first, that it attempts to defray the expenses of a by-law or regulation by means different from those which the Acts containing the charter of the town have provided: and, second, that it undertakes to enforce the observance of such by-law by a mode different from that of fine, which the charter has provided to the implied exclusion of all other modes. (See McRae vs. O’Cain, reported in Kennedy vs. Sowden, 1 McM. 328; 1 T. R. 125).
If an ordinance had directed that each of a certain class of the corporators should pay a certain share of the expenses which might be incurred for the repair , of the street they lived upon, *559 and for default of payment after notice had authorized the imposition of a fine, then upon the attempt to impose and collect such fine, the question whether the ordinance transgressed the limits of the charter would have arisen, free from all the embarrassment about form which is felt concerning the demand now urged against the defendant. To some of the Court, it appears that an ordinance, such as we have supposed, would be merely an attempt to exact an assessment indirectly under the name of a fine, not less unauthorized than a direct order to pay followed by execution after refusal. Other members of the Court think that the burden of certain expenses about the streets should, in justice, fall upon the owners of property in those streets: that regulations made upon this principle might be guarded against abuse or oppression, and that the large power given to the Council over the streets might cover such regulations made in due form.
A majority of the Court being satisfied that this action cannot be maintained, a nonsuit is ordered.
Evans, Frost, Withers and Whitner, JJ. concurred.

 Referred to by its title, 4 Stat. 181, & P. L. Titles, XLIX; but not contained in either work. Its provisions may be seen in the case of the City Council vs. Pinckney, 1 Tread. 42, 3 Brev. R. 207. Its repeal by the Act of 1785, in no wise affects its influence upon the construction of the City charter. See 1 McC. 360; 7 Stat. 98, 102.